Our fifth case for this morning is Astrid Morataya v. Attorney General Loretta Lynch. I believe we will hear first from counsel for petitioner, Mr. Trace. Thank you, Your Honor. Richard Trace for the petitioner. May it please the Court, Counsel. We're here on behalf of Astrid Morataya who languishes in immigration detention for well over a year and who brought several matters before USCIS and in her removal proceeding as well. We have a U visa that's still pending on appeal and a reconsideration of a dismissal. It was originally denied, right? That's correct, Your Honor. So it's still on that? It's on a reconsideration of a denied appeal. Okay. And then we also sent a motion to the Board of Immigration Appeals that they remand to the immigration judge under your ruling that they could now hear that case, although there's a time issue in there. If we assume that single women with tattoos is a particular social group, what is the petitioner's best evidence that this group faces persecution in Guatemala and where in the record will we find it? I think from the judge's conclusion about the lawlessness and the gangs that are overtaking society in Guatemala and the lack of the government to control them. And then we'd have to reason and infer that what is it that gangs do and why gangs would somehow persecute women with tattoos. So the problem I have is that at one level, I can't see how this distinguishes her from practically all women in Guatemala. There are reports from our Department of State, there are other materials that suggest that it's actually fairly dangerous to be a woman in Guatemala. And on the other hand, I feel as though she waived a lot of the points she might have made about these tattoos. She adamantly states that they're not gang-related, even though by appearance I guess they could be understood as that. But she says, no, it's not a gang. It's just if you happen to have a tattoo and you go back to Guatemala, you're going to be singled out by some group that the government is not able to enforce. And I'm just not aware of any such social group. The social group is indeed peculiar, but it is a red flag. It's her drawing attention to herself in a very significant way as a woman. I think women are extremely vulnerable. Why not men with tattoos if it's the tattoo? Gangs tend to inflict violence on rivals as well, male or female. Yes, I think it's a matter of drawing attention to yourself, either male or female. What definition do you understand? Your amicus are going to talk about this too, but how would you define the particular social group factor? What definition should we have? I imagine we have four here. There's her perceived wealth. No, but what does it take? This court spoke to it in our embanked decision in CC against Holder. The board has spoken to it in some decisions. What legal definition do you think? Because, of course, your opponent says there's nothing legal about this, that it's just all a bunch of facts and we have jurisdiction over nothing that you have brought before us. I think in that sense we don't have anything more than a single woman with these obvious. But you're not getting my question. One possible definition to discern social group is is it an immutable characteristic or is it a characteristic that you should not be required to change, such as perhaps your family affiliation or something like that, a religious identification. The board has gone through this visibility thing, which they've now modified a bit into some sort of specificity requirement, social visibility. They've softened it a bit. The amicus say that's not it. But what does it take to be a social group? I concur with the immutable characteristic, which I think she does have, that it has to be something that... So, of course, that's only being a woman because you can get rid of tattoos if you gather it's a painful procedure. I've not done it, but it's doable. Hers are fairly extensive, though. It doesn't mean you can't do it. It just means you've got to endure a fair amount to get rid of them. A lot in this case. So I think it's the immutable characteristic is what we're looking for here. If we were to agree with you, would it be possible that every person in her situation could go out, get tattooed, and not be sent back? Well, I think there's something logically to that. I agree with you. But I think factually it's just... It's a free pass to stay here then, right? Just go to a tattoo parlor. There are other ways to stay here other than going through what she went through. Well, a little butterfly. Like maybe not selling crack cocaine. She was already a legal permanent resident. She created a certain amount of trouble for herself. There's no question she did. But she came from a very destructive family and suffered greatly before she was even seven years old. And it's not a pretty rough life. And I think factually if she returns to Guatemala, she's an easy target. So what we need to decide... I'm going to give you one more chance to tell me this. When you are removable because of the commission of an aggravated felony, such as a controlled substance offense like her selling the cocaine, this court's jurisdiction is limited very significantly. And we cannot, and we've held strictly, we don't reconsider findings of fact, but we can look at questions of law. What question of law or questions of law do you think you're putting in front of us today? I think it's limited in this case to the failure to rationally discuss the reasons for the conclusions that the board and the IJ have made regarding the immutable characteristic. So you're trying to identify a procedural failure, if I'm going to recharacterize what you said, which is, I suppose, an allegation that they've said nothing. Now, of course, they didn't say nothing. We have a fairly lengthy decision from the immigration judge, and I wouldn't call it lengthy, but it's two pages and change from the board. So it's not as though they just flipped a coin. They tell us what they did. Although most of the argument that was addressed concerned a particular serious crime by the IJ, and I don't think it was a decision that elucidated the, as you said earlier, the legal standard for the particularly serious crime. The government is contending that several of the issues that you raise are beyond our jurisdiction. How do you respond? That's all I can say, is that the particularly serious crime issue was dealt with at length. By comparison, the other significant issues weren't, and they were quite conclusory about whether or not there was a nexus to the particular social group from the persecuting authorities, as well as other issues that were dealt perfunctorily. Okay, well, if you're ready to yield the podium to the amicus. Yes, that's fine. Thank you very much. Thank you very much. Thank you. Ms. Koop. Thank you, Your Honor. May it please the court, my name is Lisa Koop. I'm from the National Immigrant Justice Center, and I'm appearing as amicus curiae to urge this court to adhere to its existing case law with regard to the proper test to analyze the viability of a particular social group and to reject the Board of Immigration Appeals' recent decision in MEVG, which announces what amounts to a reincarnation of the social visibility test in the form of the new social distinction test, but fails to cure the concerns that this court has raised in Sisi and Benitez-Ramos in a line of cases beginning with Getimi as to the proper test for a particular social group being the immutability test. Would you agree that we could avoid entirely the issue of whether to afford Chevron a deference to the standards set out in MEVG by basing our decision solely on whether the petitioner proved the nexus between her social group and future persecution? In this case, there are other grounds. The Board of Immigration Appeals did say that assuming arguendo that her particular social group is valid, there were other reasons why her case failed. I do think that the Board's decision doesn't offer sufficient reason. It's rather conclusory in its finding, and so I do think it would be appropriate to reach the question of the viability of the particular social group, and I think it's properly before this court. The test in MEVG, as it's been announced, doesn't cure the problems that this court recognized with the social visibility test and further muddles the analysis and doesn't send a clear signal either to adjudicators or to applicants for protection, be it asylum or withholding of removal, as to what exactly it is they need to establish in order to secure protection under our immigration laws. You know, the government is asserting that particularity is not an issue in the case. That the only part of the test that's implicated here is social distinction. Yes, Your Honor. The Board of Immigration Appeals, in their decision, references social distinction. They also cite to WGR, which is the companion case to MEVG, that specifically deals with particularity. And particularity, this court, in a number of cases, most pointedly in CC and in MLA, rejects the courts, the Board of Immigration Appeals, excuse me, imposition of particularity as a requirement to establish a particular social group because we've said, or this court has said, time and again, that breadth simply can't be a limiting factor in determining whether a particular social group is viable. And that's precisely what the board does in WGR. Has any court declined to afford Chevron deference to the board's new interpretation? And are we at risk of creating a circuit split if we adopt your position? Of course, I'm asking about Roda Surulana, Puryear-Bach, the Ninth Circuit. Right, Your Honor. Poloca, you know, in the second, Juarez-Joel, in the eighth. It's correct, Your Honor, that a number of other circuits have deferred to social visibility, and so would find MEVG to largely be in line with social visibility, which this court already found problematic. Puryear-Bach, the case out of the Ninth Circuit, is a case where the Ninth Circuit specifically declined to engage fully with MEVG, but rather said, this is a case where the Board of Immigration Appeals is rejecting a particular social group precisely because they find that that particular social group, in a similar context, though not identical, wasn't viable. So, in that decision, the Board of Immigration Appeals declined or failed to apply its own test under MEVG, and the Ninth Circuit said that they would reserve for another day the question of whether MEVG was viable, but rather sent the case back because the Board failed to apply its own test. So, do I understand from the beginning of your answer to that question that you think that this court has actually already crossed that bridge toward a circuit split in CC, and all you're saying is that we should stay the course, that we wouldn't be doing anything new? Essentially, Your Honor, the Third Circuit and this circuit have found social visibility to not be a good test and to not be a necessary test because the ACOSTA test of immutability is sufficient in the asylum analysis and does send a clear signal to litigants and to the courts as to how to consider and address particular social group cases that arise in asylum and withholding of removal matters. I see my time has expired. You have a minute. It's not yet. You have a minute. If you want to wrap up, you are free to do so. Sure. I would just add in my limited time that the Board of Immigration Appeals has offered as a justification for MEVG or they've indicated that this has been an aspect of their particular social group test all along and that's simply disingenuous. If you look back at cases like Kasinga and other cases where the Board of Immigration Appeals to Boso Alfonso where they found gay Cubans or where they found women who oppose the practice of female genital mutilation and are uncircumcised and they've tried to retrofit those cases to argue that social distinction was present in those cases when it simply wasn't a part of the analysis at least not in how it's reflected in those decisions. And so this really does seem to be an arbitrary and illogical test that would be inappropriate for this court to defer to. Okay. Thank you very much and we appreciate your contribution. Ms. Green. May it please the court. I'm Susan Green for the Attorney General. And first I want to make the important point that in this case because it's subject to the criminal alien jurisdictional bar there are two dispositive questions before we ever reach the social distinction point. The social distinction point of course is important for us generally. But in this particular case there's a nexus holding and a holding that she did not prove likelihood of future persecution. And Ms. Morataya's counsel has not really raised any legal question that this court has jurisdiction to review with respect to those two issues. So this case really should be an easy case. It should be decided on that criminal alien jurisdictional bar. It's not an easy case. No. I shouldn't have said it's an easy case. None of these cases are easy cases. And I really just want to say this. Here is a woman who has been here since she was eight years old and sells $10 worth of cocaine. I honestly have lost a lot of faith in the government's decisions to bring cases like this. It just breaks my heart. But Your Honor, here I sit. And 14 years after the sale. I mean the notice to appear is shockingly long. Because that was my, I could not, I mean, I think this is the number one question on all of our minds. Why, what prompted the government to initiate removal proceedings against this particular petition? Your Honor, those are all questions of prosecutorial discretion. And if the court had jurisdiction over prosecutorial discretion, then I would be glad to talk about them. But I don't want to invite the court to examine something that is not the court's business. It is the business of the Immigration and Customs Enforcement. And I assure you that I have explored the possibility of prosecutorial discretion more than once. And the decision was made that this case is not an appropriate case for that. And I'm... It's like spinning a roulette wheel. That's the problem. You know, it's your discretion is so broad that there's no standard at all. And I understand. And under no... We're not the prosecutors. And under no circumstances are we blaming you. Right. You are here. And we... Not at all. But... I'm counsel for the government. I hear what you're saying. And I want you to know that we take it seriously. And I would be glad to discuss everything about prosecutorial discretion if it was something before the court. But it would be misleading to the court to suggest that it's something that you all should be overseeing. Well, let me take you back to the legal test for a particular social group, which is a statutory requirement. And I'm myself convinced that interpreting the statute presents a legal question. I'm very unimpressed, I have to say, by this social distinction test. I don't know how you would ever figure out which groups are socially distinct without going, for instance, to Guatemala and having the Pew Charitable Trust run a public opinion poll throughout all the people in Guatemala so they can say, yeah, you know, we think women with tattoos stand out, or no, you know, we never pay any attention to anybody's tattoos because everybody has tattoos here, or whatever else. It's a very unsatisfactory test. This court in Sisi, I think, very clearly rejected tests like that and said, no, social group is just, you know, immutable, shouldn't have to change. That's that. There's a lot of questions there, and I'll try to get at them one by one. First of all, the court in Sisi and the court in the other cases where this court is considered the social visibility factor, the court was, actually, the background of that, of course, is that the court was misunderstanding what the board meant by social visibility. I don't think so. I don't think so at all. You don't want to tell us that we misunderstood. Yeah, you certainly don't want to tell me that. The court couldn't have been more clear. Now, the board may have morphed a little bit in light of the criticism it was receiving for its social visibility test, but I'm telling you that social distinction doesn't help me much, that it's just a somewhat different way of approaching the same thing that still requires the public opinion poll. Your Honor, first of all, your earlier cases talked about social visibility as if it required literal on-site visibility. The board made very clear that that was not what they were talking about. The board, after the fact, said, oh, we didn't think you had to walk around with a Scarlet A on your chest. Fine. You know, as far as it goes, that was at least good. But the fact is, social distinction, when many persecuted groups will do everything they possibly can to avoid being noticed, to avoid being distinct. And the board absolutely said that hiding, you know, the possibility that someone could hide the characteristic is not the test. The test is whether the characteristic is something that is important in the society. And the board went back and explained why, I'm sorry. Okay, let me go ahead. And the board went back and explained that its initial approach to interpreting a particular social group was the use of generous approach, where it tried to analogize a particular social group. It tried to interpret it in light of its place in those protected grounds of race, religion, nationality, and political opinion. That is a hard question. Its first approach was to say, well, what they all have in common is immutable characteristics. But after interpreting... Well, political opinion, no, but political opinion adds the you shouldn't be required to change your political opinion. And the board, their way of interpreting immutable characteristics included things that either couldn't be changed or shouldn't have to be changed. So they've called that immutable characteristics. And that's what we're saying ought to be the end of it. Yes. No, ma'am. After applying that... Well, that is what we're saying. It may not be what the board is saying. Right. After applying that for some time, the board began finding that the immutable characteristics test was actually... If those words were taken literally, it would start... It became extremely broad, so broad, that it no longer fulfilled the function of identifying characteristics that were analogous to race, religion, and so forth. That question of what's analogous to race and religion is a hard question that the Supreme Court has struggled with for decades in the equal protection context. The board struggled with it for 20 years and then decided that immutable characteristics cannot be the whole test. And by way of comparison... Why is the board so frightened about the potential breadth of this test when this is not the only thing people have to prove in order to get asylum? They have to prove that there is persecution on the basis of that factor. Exactly. It's not breadth. And you can't define solely because of we're all the people who the XYZ group is persecuting. You can't do that. We understand that. Sure. I mean, there's so many questions. But first of all, the board said that in order to be analogous to race and religion, it thought that all of those terms referred to factions in the society. So therefore, the board adopted the social distinction test to help identify what groups were, as the Sixth Circuit says, socially salient. What were the important groups in a society that were comparable to race and religion, that were considered factions? And so, I mean, that's very similar to the kind of test that the Supreme Court uses in equal protection law. Try to figure out what are the important groups. The reason why it's very important, that question is very important, is not because certain groups are very broad. The court said and CC, they said, we don't understand why broad groups is a problem because look at Title VII. It has very broad groups. But Title VII has a limited number of protected grounds. And so, therefore, you could say, was it for race? Was it for religion? And so forth. It's easy to arrive to do the nexus analysis. But particular social group is really different from that because there are an infinite number of possible particular social groups. There's no limit to that. Why is that? Yeah, but I don't understand why that's a problem. Because here, you could say she's a woman. She's single. She's Americanized. She's perceived as wealthy. She has tattoos on her body. And those tattoos are likely to be associated with gang membership. You still have to show possibility of persecution. But those are that combination. What's wrong with that combination? It's because of this. Because the board in MEBG, this is a really important part of MEBG. They said, the first thing that we know about the refugee definition is that it's not intended to include any possible reason why a person would be persecuted.  under-comment... And we're not asking that question. We're saying, are you definable in a society by the package of characters? You might be definable by age. You might be definable by the fact that you have a college degree, which might be a group that is subject to, as you say, social salience in a particular country. A social salience test might not be that bad. But that's not what the board is talking about. That's exactly what the board is using social distinction for. It's that kind of social salience. Because if a particular social group, if you can go backwards from whatever happened and go backwards and just describe whatever it is that happened and make that a particular social group,   unaccounted-of clause. Because it means that all you have to do is figure out why a person would be persecuted. And that's exactly what the board is using to say that a person was victimized by a criminal and put that into words and that will cover, that will bring the person into... Not unless it's a group. We've taken great care not to do that in our opinions. Taken great care to say first you've got to define the group, then you need to see if there's... But that's not the way it's done from the point of view of the litigation. From the point of view of the litigation, all they do and have to do if immutable characteristics is the only test, all you have to do is simply describe what happened to you in terms of past experience and then voila, you come within the list of five protected grounds. And the board said that is so broad that it basically undoes on account of having an unaccounted-of clause at all. So you might need to be careful with past experience. Past experience can't be I went to high school in Houston. Past experience has to be something that's... has to have some significance. I can't change the past. We all understand that. That's immutable. And the board explained in MBBG that that, you know, having it so broad that it includes any past experience... But former members of the military, for example, who can't change the fact that that is their association who are now being persecuted on the fact that they are the alums of the military, so to speak, that seems to me a very serious ground of persecution. Your Honor, that test between past experience and current experience is illusory because any experience that a person is having right now, they've already had that experience. So the bottom line, and this is what the board said in MBBG, is that we need to focus on the reasons that are accepted as important factions or identifying characteristics in that society. And how do you do that? Exactly. Without going down there and asking everybody. Well, the board in MBBG knows what's important in every society on the planet. In MBBG, the board actually gave examples of the kind of evidence that they see all the time in their cases, like the country conditions reports, the press reports that said evidence of long-standing   The evidence is not a problem. There is no free press in those places. Well, there's free press here that gives you the information that you need to know that can report on that. And often do. We see that in all the immigration records. It's very, very common to have news reports in immigration records. And the State Department reports from certain countries, but not from places that are virtual dictatorships.  here, for instance, we're talking about Guatemala, and I'm sure that the court has had huge problems. Which is a society that's had huge problems. Right. And we see the news reports. There are news reports in this record. Lack of evidence is not a problem. So, and I urge the court to remember that the test is whether the board's test is a reasonable construction of the statute. And how you tell that is whether the board looked at the purpose of the statute, whether they looked at the structure of the statute, and whether they tried to give meaning to the different parts of the statute. In MEVG, the board is very meticulous about trying to follow that methodology. The MEVG shows that the board did what it was supposed to do in order to have its interpretation be accorded Chevron deference. And I didn't get to say that the board also in MEVG has shown that the social distinction test has factual aspects. And because it has factual aspects, we think that it should be reviewed for substantial evidence rather than as a matter of law. And I know that's different from what the court said in CC, but the court... You can't just collapse the fact that a legal test has some facts that need to be proven in order to see if it's satisfied or not and then just say presto, it's all factual. There's a legal test that has to be ascertained, and then most legal tests require some application. And we certainly understand that there are these two stages. But I'm not aware of any legal tests that just float out there in the atmosphere with no further follow-up on to see whether the facts put you on this side or that side of the legal test. And your brief seems to think that because there are some facts that eventually need to be determined for a social group, the whole thing is unreviewable, which seems to me an untenable position. Well, I mean, it's like... Excuse me, I see my time is out. You can finish. Many, many of these questions are reviewed for substantial evidence. They're actually mixed questions of fact and law. And so the particular social group as it's been defined in MEVG is also one of those that should be reviewed for substantial evidence. But then it's not a legal issue to which any deference under Chevron is owed. It's just a fact here and a fact there. No, no, no. The interpretation is a legal question. Correct. And so we have jurisdiction to look at the interpretation under subpart D. Yes. Let me just ask this. Because we have facts here that support her... The petitioner and her witnesses collectively testified that her social group existed. She was afraid of harm in Guatemala on account of that membership. The IJ found all the testimony credible except that relating to the drug offense. Isn't a finding against petitioner on the social group and the nexus issues inconsistent with the credibility determination? No. I mean, no. He just said that the things that she was testifying to didn't support her conclusions. That, you know, for instance, she said that she talked to somebody in detention that told her that, you know, those tattoos could land you in trouble. The immigration judge didn't say, you know, I don't think that she's being honest with me. He said that the things that she is saying are not a sufficient ground to persuade me that this is, in fact, that, you know, she knows what she's talking about and this is an accurate assessment of what would happen. Thank you. All right. Thank you very much. Thank you. Anything further, Mr. Trace? All right. Thanks. We thank all counsel and we'll take the case under advisement.